## LIZZIE OSBORNE v. J. B. ANDREES.

MORTGAGE — *Material Change by Husband — Foreclosure, not Defeated.*
Where a note signed by a husband and wife was secured by a mort-gage upon the homestead, and the husband, when about to deliver the note and mortgage to the mortgagee, changed "date" to "due" in the note and mortgage, but upon being detected in his act by the mortgagee, corrected the note so as to read, "with interest from date," as originally signed, and the mortgagee accepted the note and mort-gage, with the understanding that both read, "with interest from date," and loaned his money thereon, *held*, as the note was corrected

before delivery, so as to read as originally signed, and as the mortgage was intended to secure said note, and the word "date" was changed to "due" fraudulently, without the knowledge of the mortgagee, or the wife, that the mortgagee is entitled to recover thereon, as there was no material alteration in the note, and the fraud of the husband in attempting to change the mortgage could not defeat the foreclosure thereof.

*Error from Wilson District Court.*

THE opinion states the case. Judgment for plaintiff *Andrees*, at the September Term, 1884. The defendant wife brings the case to this court.

*Kirkpatrick & Vestal*, for plaintiff in error.

*T. J. Hudson*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This action was brought by J. B. Andrees against Lizzie Osborne and her husband, J. W. C. Osborne upon a certain promissory note of four hundred dollars, secured by a mortgage, alleged to have been executed by Osborne and wife to J. B. Andrees. In answer to the plaintiff's petition, Osborne and wife admitted the signatures upon the note and mortgage to be theirs, but contended that the terms and conditions of the note, as well as the mortgage, had been materially altered since the execution and delivery of the same to the plaintiff. The jury returned a general verdict for Andrees against Osborne and wife, and Lizzie Osborne complains thereof. The note set forth in the petition is as follows:

"$400. CHERRYVALE, KAS., June 28, 1881.—Six months after date, we promise to pay to the order of J. B. Andrees four hundred dollars, payable at Cherryvale, Kansas, with interest at the rate of 12 per cent. per annum from date until paid — interest payable at maturity of note. Due Dec. 28. Value received. J. W. C. OSBORNE.
LIZZIE OSBORNE."

In addition to the general verdict, the jury also returned into court certain special findings of fact, as follows:

"Q. Was the mortgage in suit, after it was signed and acknowledged by Osborne's wife, altered by Osborne, so as to

make it read, 'with interest from due,' instead of 'with interest from date'? A. Yes. Q. Was this alteration made with Andrees's knowledge and consent? A. No. Q. Was such alteration made without the knowledge and consent of Mrs. Lizzie Osborne? A. We believe it was."

Upon the findings of fact, Lizzie Osborne, the wife, moved the court for judgment in her favor; this was refused, and thereupon she filed her motion for a new trial; this was overruled. All the evidence produced upon the trial shows that the note and the mortgage were signed, as alleged in the petition, "with interest from date."

J. W. C. Osborne testified concerning the alteration, as follows:

"I drew up this note and mortgage. They are in my handwrite. At the time I drew up the papers, I thought I was to get the $400, and pay interest at the rate of twelve per cent. per annum from date, and I drew the note and mortgage that way; that is, I drew the note to read 'with interest from date at the rate of twelve per cent. per annum — interest payable at maturity of note.' When I presented the note to Mr. Andrees, he said he could not let me have the money that way, and wanted to deduct the interest from the face of the note. I finally agreed to let him do so, and I then erased the word 'date' and wrote the word 'due' after it, and that made the note read 'with interest from due' at twelve per cent. per annum till paid — interest payable at maturity of note. Andrees accepted the note in that condition, and gave me $376. I made the change in the note and mortgage after my wife had signed them and acknowledged the mortgage."

Andrees testified in answer that —

"At the time I loaned Osborne the $400, I went to his office in Cherryvale and he showed me the note and mortgage. I read the note and it was all right, just as we had agreed upon. That is, it read with interest at 12 per cent. per annum from date — interest payable at maturity of note; and I said to him that that was all right. I then glanced hurriedly over the mortgage, but did not read it. I saw that the lots were described, and that the mortgage was signed and acknowledged, and I threw it and the note down on the table in front of Osborne and turned partly around, so that my back was partly to Osborne. As I was reaching my inside coat pocket for my

pocket-book for the money to give him, I heard him make a move, and I glanced over my shoulder and saw him crossing out the word 'date' in the note and writing the word 'due' after it. I turned around and asked him why he did that, and hesitating a moment, he then tried to make me believe that 'due' was the word we ought to use in the note to make it read right. He insisted that he was right, and I told him that unless he changed the word 'due' back to 'date' he would not get any of my money. He then took his pen and wrote 'ate' over 'ue,' in the word due, and I then accepted the note in that condition and gave him $400 in cash. I did not deduct the interest from the face of the note, as he has testified, at all. He took the mortgage and put it in an envelope, and told me I ought to send it to Independence at once and have it recorded, and I did so without again looking at it. Osborne did not want to take the $400 loan at first; he wanted $700, and claimed that $400 would not be enough to let him out; that he owed some small claims amounting to more than four hundred dollars; but I would not let him have any more on his property, and he finally took it."

It is evident from the instructions and the general verdict, that the jury believed when Andrees received the note and mortgage, that the note read, as originally signed, "with interest from date." The defendants below attempted to show that the note, when actually delivered, read, "with interest from due." In this view, the finding of the jury, that the mortgage was altered by Osborne so as to read "with interest from due" instead of "with interest from date," is immaterial; because, although it is true that Osborne changed the note "from date" to "from due," under the instructions and general finding of the jury the jury found in accordance with Andrees's evidence that Osborne corrected the note from "due" to "date" before he delivered it to Andrees: in other words, Osborne attempted to change "date" to "due," and thus by altering the note and mortgage render them absolutely void; but when detected in his purpose, he corrected "due" to "date" in the note, and upon the note as thus corrected Andrees loaned the money. This is the note which the mortgage was intended to secure. This is the note which was actually secured by the mortgage. Under the general verdict and the findings, the

change in the mortgage of "date" to "due" was the fraudulent act of Osborne, made without the knowledge or consent of either his wife or the mortgagee, and when the mortgagee accepted the note and mortgage he understood that the note was secured by the mortgage, and that the mortgage corresponded with the note, which then read "with interest from date." The fraudulent act and conduct of Osborne ought not, and it will not, defeat recovery on the mortgage.

Upon the conclusion we have reached, the refusal of the court to allow Mrs. Osborne to show that the property described in the mortgage had been occupied by her and her husband as their homestead, is immaterial.

We have not deemed it necessary to consider the exceptions presented to the case-made — although some of them are well taken — as the judgment rendered is not to be disturbed.

The judgment of the district court will be affirmed.

All the Justices concurring.